[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 537 
The defendants by their guaranty engaged that Ephraim Durham, the maker of the note given in evidence in this case, should pay the amount therein specified pursuant to its terms, to the plaintiff as the bearer. The maker of the note owed the amount, and the defendants, if their guaranty was valid, became in effect answerable for the payment of the debt. So the papers read, and so they must be construed, as they cannot be contradicted by parol evidence. But the guaranty does not say nor necessarily import that it was given specially to secure the payment of the debt of another. To prove that it was not, but that it was mainly designed to fulfil some distinct obligation of the guarantor, would not contradict it, but would apply it to its intended purpose. That such evidence is competent there can be no doubt. In Walrath v. Thompson, (4 Hill, 200,) Judge Cowen said that "guaranties must, as we have lately held in several cases, be construed by the same rules, and may be explained by the same evidence as other contracts. There is no reason for any distinction." As a question of fact, the inference from the language of the papers might and probably would be that the engagement of the guarantor was particularly for the payment of the debt of the *Page 538 
maker of the note. But an inference, except when it is thepresumptio juris et de jure of the civilians, which this is not, may be rebutted by evidence. The rule is familiar and needs no authority to support it.
The statute does not avoid all contracts for the payment of the debts of another when not made with the prescribed requisites. It declares that every special promise to answer for the debt, c. of another shall be void, unless the agreement, or some note or memorandum of it, expressing the consideration, is reduced to writing, and signed by the party to be charged. The word "special," according to Walker, means "denoting a sort or species, particular, peculiar, appropriate, designed for aparticular purpose." The statute was designed to avoid only such promises as are especially and particularly to answer for the debts of others, not those which, while incidentally assuming the responsibility for such debts, are wholly or principally for the purpose of performing some distinct obligation of the promisor. Where the end to be accomplished through the agency of another pursuant to a promise is personal to the individual making it, there is no more necessity or propriety in requiring that such promise, or the consideration for which it is made, should be reduced to writing, than there is where he engages to pay his own debt in person. Hence it has been held repeatedly that the statute does not extend to guaranties of promissory notes where the object of the guarantors is to pay their own debts through the agency of the makers of the notes to which their engagements relate. The reasons are stated very forcibly and clearly by Judge Bronson, in the case of Johnson v. Gilbert, (4 Hill, 178,) and received the sanction of this court in the case of Brown v.Curtis, decided at the last May term.(a) In the last case it appeared from the evidence that the guarantor transferred the note and signed the guaranty for the purpose of paying through such note a debt which he had previously incurred, and which was subsisting at the time, for money lent to him by the person to whom the guaranty was made. It was said in one of the opinions given in that case, *Page 539 
and which I quote because it received the concurrence of a majority of the judges of this court: "If he" (the guarantor) "intends by the payment of the note which he guarantees to discharge a distinct obligation of his own — one not originally at all connected with, or having reference to the note, then he in effect contracts for himself, his undertaking is original, and not within the statute, and no consideration need be expressed in the guaranty. He engages to discharge his own liability through the agency of another. It matters not if he even transfers the note so as to enable the new holder to maintain a suit upon it in his own name. All that is done as a means of satisfying the debt of the guarantors." True, another ground for the decision of that case was mentioned in the opinion from which I have quoted, but it was not much discussed, and was not mentioned at all in the only other written opinion which was given by my brother Bronson. He followed the opinion given by him in Johnson v. Gilbert. The question as to the validity of the guaranty was distinctly involved, and was the only one discussed at the bar, and a majority of the judges of this court certainly agreed that the guaranty in that case of Brown v. Curtis was valid, although it expressed no consideration. It appears to me that the decision of this court in that case is directly in point on the question now under consideration, and must conclude us as to that. I am not one of those who think that the solemn adjudications of this, our tribunal of the last resort, should be subject to future discussion, revision and mutation. The evils which would result from such a course, if tolerated, will readily suggest themselves to every intelligent mind. The uncertainty of the law, which is now proverbial, and productive of so much evil to the community, would be greatly increased. The court is not so constituted as to insure a continued coincidence of opinion, and particularly on intricate and doubtful points. Our constitution requires an annual change of half its members. The biennial change owing to the vicissitudes of popular elections (however appropriate they may be in the main) may be still greater. The infusion of new judges might often lead to the adoption of new opinions on open questions, and should former determinations not be held sacred they *Page 540 
would frequently be overthrown. As it has been, and I trust will continue to be, men have been influenced and guided in their most solemn acts, in the acquisition of their dearest and most important rights, by the decisions of our highest court, and the conviction that they will be maintained. To allow those rights to be defeated by the tribunal under the sanction of whose adjudication the parties had acted in their efforts to acquire them, would be productive of monstrous injustice. In many, perhaps a majority of the cases argued here, it is far more important that the question involved should be settled, than how it is decided. The interests of the party having the abstract right undoubtedly call for accuracy of judgment, but the interests of the public call more loudly and emphatically for uniformity. That this court has erred and may continue to err occasionally there can be no doubt. Infallibility is not the attribute of any human tribunal. It is of course incumbent upon every judge to do all in his power to arrive at a correct conclusion in every case submitted for his determination; but if after having fully discharged that duty he should still go wrong, the infirmity of the human understanding will excuse the error. It has been urged as a reason for calling on this court to revise and reverse its former decisions, that they are sometimes adopted inconsiderately, and without a full examination of the points of law which they involve. My experience here has been brief, but it has been long enough to satisfy me that the cases discussed in this court are subjected to a thorough investigation by the judges, and their determinations are adopted upon a full discussion during a most anxious consultation. If a decision of this court should recognize, and thereby in effect establish a rule which should be unjust or in any way injurious to the community, it may be modified or abolished by the legislature. The action of the legislative department would be the more appropriate in such cases, as it acts prospectively, and does not impair rights already acquired.
It has been settled, as I conceive, by the decision of this court in Brown v. Curtis, that a guarantee, although not expressing in terms any consideration, when given towards payment of the individual debt of the guarantor is valid. In the case under consideration *Page 541 
it appeared from the evidence, to the admission of which no objection was raised, and it seems to have been admitted on the trial, that the note in question was transferred, and the guaranty given, for a part of the purchase money for a horse sold by the plaintiff to Cyrus P. Durham, one of the guarantors. His object was to pay for the horse, and not merely or principally to become responsible for the payment of the debt of another. This undertaking was for the payment of his own debt through the agency of the maker of the note. It was, therefore, original, and not reached by the statute.
Then as to the defendant Moulthrop, the other guarantor. It appears from the testimony that at the time of the sale of the horse by the plaintiff to Cyrus P. Durham, Moulthrop and C.P. Durham gave a note signed by themselves, for a part of the consideration money, and signed the guaranty in question for the residue. The inference is that this method of securing the payment of the purchase money was included in, and a part of the bargain for the horse, and adopted with the consent of Moulthrop. Both C.P. Durham and Moulthrop engaged to pay a part of the money directly through their note, and the residue through the note of E. Durham. By the guaranty, both of the defendants engaged that E. Durham should pay the money due, not primarily from him, but from one of themselves, to the plaintiff. The two engaged for the payment of the debt of one of them in a particular way. The promise of Moulthrop was not especially for the purpose of paying the debt of the maker of the note. He cared nothing about that in itself; his only object and in effect his engagement was to pay the debt of his co-guarantors. The method was incidental. In substance it was a direct original undertaking. The promise by Moulthrop was absolute and unconditional, that the purchase money for the horse should be paid in a particular manner. That he then became responsible for the debt of the maker of the note was merely incidental, and could not defeat a valid engagement, nor qualify one so as to render it invalid. The rule on this subject is well laid down by Chancellor Walworth in the case of Rogers
v. Kneeland, in the court for the correction of errors, (13Wend. 122.) He there says that "when *Page 542 
one party makes an absolute and unconditional promise to pay for goods delivered to another, he becomes the principal debtor to the party delivering the goods; but if he only promises to be answerable that the goods shall be paid for by the person to whom they are to be delivered, such promise is merely collateral to the liability of the other person, and is of course within the statute. Moulthrop in this case subscribed a joint engagement with his co-guarantors. In terms both were equally bound by it as principal, and I can see no reason for separating them in their liability. In my opinion the statute has no application to this joint engagement of the two to pay the original debt of one of them through a third person.
The judgment of the supreme court must therefore be affirmed.
RUGGLES, CADY and SHANKLAND, Js. concurred.
(a) Reported ante, p. 225.¹